IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAY C. B. JR.,[1] <br><br> **Plaintiff,** <br><br> v. <br><br> **COMISSIONER of SOCIAL SECURITY,** <br><br> **Defendant.** | Case No. 22-CV-02180-SPM |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") benefits pursuant to 42 U.S.C. § 423, a period of disability pursuant to 42 U.S.C. § 416(i), and Title XVI Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 1382.[2]

## PROCEDURAL HISTORY

Plaintiff applied for benefits on March 18, 2020, alleging disability beginning January 10, 2020. (Tr. 270, 286). After holding an evidentiary hearing, the Administrative Law Judge (ALJ) denied the application on August 17, 2020 (Tr. 22-

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

37). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following points:

1. The ALJ failed to fully develop the record.

2. The ALJ's findings at step five were not supported by substantial evidence.

3. The ALJ failed to properly evaluate plaintiff's credibility.

## APPLICABLE LEGAL STANDARDS

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The

plaintiff bears the burden of proof at steps 1–4. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).
In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. (Tr. 25). The ALJ found that plaintiff had status post removal of neuroma/ganglion cyst of the second interspace of the left foot with residual capsulitis; Raynaud's disease/moderate small vessel disease of the bilateral lower extremities; mild degenerative disc disease at L4-L5 and L5-S1; and mild narrowing of the first and third metacarpophalangeal joints of the left hand. (Tr. 26).

The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work, but limited in that he cannot climb ladders, ropes, or scaffolds; and can occasionally climb ramps and stairs. (Tr. 29). The ALJ also determined Plaintiff can perform no more than occasional balancing on narrow, slippery, or erratically moving surfaces; he cannot operate foot controls with the left lower extremity; and can have no concentrated exposure to extreme cold. (*Id.*). Based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff was unable to do his past relevant work, while also making an alternative finding that he was able to do other jobs at the light exertional level which exist in significant numbers in the national economy.

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The Court finds that the ALJ's summary of the record in her decision, when compared with the issues raised by Plaintiff, is sufficiently comprehensive. The Court will, however, note some key findings.

I. **Agency Records**

Plaintiff was born on October 13, 1968 and received a GED. (Tr. 286, 293). In his function report, Plaintiff stated that he had problems standing for more than two hours and walking due to pain and swelling post-surgery on his left foot for a cyst. (Tr. 298-299). He alleged that pain throughout the night caused him to wake up intermittently. (Tr. 299). He stated that he could no longer perform the functions of his construction job. (*Id.*). Plaintiff acknowledged that he could still cook meals, cut his grass with a riding mower, do laundry, drive, and shop. (Tr. 300-301).

II. **Evidentiary Hearing**

At the evidentiary hearing conducted by the ALJ in April 2021, a VE testified. Plaintiff's attorney stipulated to the VE's qualifications to testify. (Tr. 145). The ALJ asked the VE a hypothetical question which comported with the ultimate RFC assessment (Tr. 146-47). The VE testified that this person could not perform Plaintiff's past relevant work, but he could perform jobs at the light exertional level, specifically a dining attendant, janitor, and retail clerk. (Tr. 147). She also testified that there were 430,000, 900,000, and 4,000,000 jobs available in the national economy for these three positions, respectively. (*Id.*). Plaintiff's attorney asked the VE for the source of her job numbers, and she responded that she used figures from the Bureau of Labor Statistics. (Tr. 149). When asked whether she was "using the grouping for the SOC codes, or . . . breaking them down a little further into the DOT," the VE said she provided a representative DOT code from the broader Bureau of

Labor Statistics grouping.³ (Tr. 149-50). Plaintiff's attorney then said she had no further questions. (Tr. 150). Counsel did not object to Ms. Young's testimony at the hearing. After the hearing, Plaintiff submitted a brief objecting to Ms. Young's testimony. (Tr. 353-72).

### III.  Medical Records

In October 2019, about three months before his alleged onset date, Kyle Wilmes, DPM, performed surgery to remove a soft tissue mass in Plaintiff's left foot. (Tr. 407-8). Dr. Wilmes gave Plaintiff directions to not bear any weight on his left lower extremity. (Tr. 408). Later, Dr. Wilmes noted in a post-operation follow-up that Plaintiff was extremely noncompliant throughout the postoperative process. (Tr. 384). Plaintiff was officially approved to resume regular activity in December 2019, though he was told to "take it easy" on his feet and not work so many different hours at different jobs. (Tr. 387, 393, 395, 396, 398, 399-400, 408). At that time, Plaintiff told Dr. Wilmes that he was continuing to work on his foot every day for 12-hour days in work boots. (Tr. 386). Despite complaints of left foot pain, follow-up examinations showed Plaintiff did not use an assistive device; had intact sensation, full muscle strength, normal muscle mass, bulk, symmetry, tone, and normal range of motion; and he continued to work in construction. (Tr. 379, 384-85, 573 575, 577, 680, 725-26, 727, 838). In January 2020, Plaintiff was diagnosed with mild degenerative disc disease in his lumbar spine after slipping and falling on ice. (Tr. 382-83, 443, 519-20).

---

³ The SOC (Standard Occupational Classification) system used by the Bureau of Labor Statistics broadly classifies occupational categories. *See Fetting v. Kijakazi*, 62 F.4th 332, 337 (7th Cir. 2023). Generally, each SOC grouping contains multiple DOT job titles. *See id.*

This was the only time Plaintiff's records showed that he used a cane. (Tr. 382). He was prescribed Meloxicam and Flexeril. (Tr. 383). Plaintiff also reported continued pain in the left foot. (Tr. 440-41). In February 2020, Dr. Wilmes administered a Kenalog injection at the second interspace on the left foot to treat pain. (Tr. 440). Plaintiff was also diagnosed with Raynaud's disease after telling his podiatrist he always had cold hands and feet and an examination showed symmetrical changes to coloration in his feet. (Tr. 378-79). While Doppler imaging of Plaintiff's lower extremities in November 2019 showed no evidence of deep vein thrombosis, testing at that time additionally showed evidence of moderate small vessel disease bilaterally. (Tr. 435-36, 440, 451, 519, 522).

In April 2020, Plaintiff reported continued pain over the excision site where the cyst was removed. (Tr. 691). An MRI of Plaintiff's left foot showed minimal osteoarthritis at the first MTP joint and no mass. (Tr. 523-24, 543-4, 576). In March 2021, Plaintiff was treated with topical pain gel, Gabapentin, oxycodone, and steroid injections, which he reported helped. (Tr. 573-74, 576). He was also prescribed a custom orthotic for his left foot with a built-in metatarsal pad. (Tr. 576, 728, 736).

In April 2021, Plaintiff complained of left-hand pain and imaging showed mild narrowing in two joints. (Tr. 813, 821-22). He was prescribed Tylenol with codeine and a steroid. (Tr. 827). Throughout early 2021, despite Plaintiff's continued complaints of left foot pain and the podiatrist's observation of pain on palpation, Plaintiff reported he was continuing to do construction work. (Tr. 725-26, 727-28, 838-39).

## IV.   State Agency RFC Assessments

In June 2020, state agency physician Dr. Frank Mikell assessed plaintiff's physical RFC based on a review of the medical records. (Tr. 152-159). He opined that Plaintiff could perform work at the light exertional level 12 months after onset. (Tr. 159). He found that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours, and sit 6 hours, in an 8-hour workday.

In July 2020, state agency physician Dr. Mario Affinatii assessed plaintiff's RFC based on a review of the medical records and mostly agreed with Mikell's findings, determining that Plaintiff could perform work at the light exertional level 12 months after onset. (Tr. 162-169).

## ANALYSIS

Plaintiff claimed he suffered from a variety physical ailments that, in conjunction, prevent him from being able to perform even light work.

This Court reviews the Commissioner's decision to ensure that it is supported by substantial evidence and that no mistakes of law were made. However, the scope is limited and review is deferential. The record indicates that the ALJ's findings were supported by substantial evidence, and she did not commit any errors of law.

## I.   RFC

Plaintiff argued that the ALJ failed to adequately develop the record by obtaining all his relevant medical records.

An ALJ has an independent duty to develop the record fully and fairly. 20 C.F.R. § 404.1512(b). "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and

against granting benefits [internal citation omitted]." *Sims v. Apfel*, 120 S. Ct. 2080, 2085 (2000). While that duty is enhanced where plaintiff was pro se at the agency level, it is not eliminated where a claimant had counsel. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) ("This duty is enhanced when a claimant appears without counsel....").

Citing 20 CFR § 404.1509, Plaintiff contended that the ALJ was required to obtain a medical opinion to support her conclusion that Plaintiff was capable of light work after the 12-month "duration requirement." Plaintiff asserted that the state agency consultants' RFC findings 12 months after onset do not fit the bill.

Initially, ALJs are not required to base the RFC on a medical opinion. *See Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone — not a treating or examining doctor — to decide."); *Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021) (similar); 20 C.F.R. § 404.1546(c) ("the administrative law judge . . . is responsible for assessing your residual functional capacity").

Additionally, the ALJ appropriately found the opinions from Drs. Mikell and Affinatii persuasive and incorporated their suggested limitations in the RFC. Plaintiff's unsupported assertions that those opinions are medical conjecture and could not be reasonably relied on to determine Plaintiff's RFC are without merit. Agency policy provides that "an RFC must be projected 12 months from the onset date when: the case is adjudicated within 12 months of onset, the severity of the impairment is disabling at the time of adjudication, and the impairment(s) will not

meet or equal a listed impairment, but will continue to be severe 12 months from onset." POMS DI 24510.020.A.[4]

Plaintiff applied for benefits in March 2020, only two months after his January 2020 alleged onset date. Tr. 270, 286. Plaintiff's impairments prevented him from working at the time Drs. Mikell and Affinatii reviewed the record (Tr. 160), but did not meet or equal a listed impairment and were expected to continue to be severe twelve months after his onset date (Tr. 156-57, 166-68). Therefore, the doctors were *required* to provide a projected RFC under POMS DI 24510.020. Drs. Mikell and Affinatii, who are "expert[s] in Social Security disability evaluation," *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022), were well qualified to provide that RFC pursuant to agency policy.

Furthermore, the ALJ supported her decision with substantial evidence. As a result, Plaintiff cannot overcome the substantial evidence standard, under which a Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022).

## II. Step 5

Plaintiff also argued that the testimony of the VE was not supported by substantial evidence and, therefore, did not support the ALJ's finding. "The Commissioner bears the step-five burden of establishing that the claimant can perform other work that 'exists in significant numbers in the national economy.'"

---

[4] POMS is an internal agency manual. *See Parker for Lamon v. Sullivan*, 891 F.2d 185, 190 (7th Cir. 1989).

*Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008), citing 20 C.F.R. § 404.1560(c)(2).

The testimony of a VE can constitute substantial evidence to support the ALJ's step five finding, but only if that testimony is reliable. *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004). Although the Federal Rules of Evidence do not apply in administrative proceedings, expert witnesses still must use reliable methods to arrive at their conclusions. "If the basis of the vocational expert's conclusions is questioned at the hearing, however, then the ALJ should make an inquiry (similar though not necessarily identical to that of Rule 702 [Federal Rules of Evidence] to find out whether the purported expert's conclusions are reliable." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). "A claimant must object to the VE's testimony or otherwise indicate that the testimony is unreliable during the administrative hearing (or after, in a posthearing brief) to preserve his objection." *Leisgang v. Kijakazi*, 72 F.4th 216, 219-20 (7th Cir. 2023) (citing *Fetting*, 62 F.4th at 337-38).

Here, Plaintiff's counsel did not object to the VE's testimony during the hearing. He did object and move to strike the testimony after the fact, but he submitted a letter with vague arguments that do not appear to directly challenge the actual job numbers or the process the VE used. Plaintiff's counsel could not do that because he did not cross-examine the VE extensively about the sources and methodology she utilized to produce her job numbers. He was seemingly satisfied after asking a few basic questions about her methodology. Based on that, the ALJ did not need to compel the VE to offer a "reasoned and principled explanation" of the

methodology she used to produce the estimated job numbers. *Chavez v. Berryhill*, 895 F.3d 962, 966, 969 (7th Cir. 2018).

## III.  Credibility

Plaintiff additionally argued that the ALJ inappropriately considered at step 1 of the sequential evaluation process that his receipt of unemployment benefits in 2020 was inconsistent with his allegation of disability.

The Seventh Circuit has held that "[c]redibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) (quoting *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)). However, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (quoting *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994)).

The ALJ's credibility assessment need not be "flawless;" it passes muster if it is not "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). The analysis is deemed to be patently wrong "only when the ALJ's determination lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413–414 (7th Cir. 2008). Generally, an ALJ's credibility analysis will be upheld "if the ALJ provided specific reasons for discrediting the claimant's testimony." *Ronning v. Colvin*, 555 Fed. App'x 619, 623 (7th Cir. 2014). Here, the ALJ gave specific reasons why Plaintiff's functioning was inconsistent with his allegation of disability. It is evident that she considered the appropriate factors and built the required logical bridge from the

evidence to her conclusions about Plaintiff's claims. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). Given this, the ALJ's consideration of Plaintiff's receipt of unemployment benefits was harmless error at most. Therefore, her credibility determination stands.

## CONCLUSION

After careful review of the record, the Court is convinced that the ALJ committed no reversable errors of law, and that her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's applications for disability benefits is **AFFIRMED**. The Clerk of Court is **DIRECTED** to close this case and enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED:  February 15, 2024**

s/ *Stephen P. McGlynn*
STEPHEN P. McGLYNN
U.S. District Judge
